May it please the Court, my name is Laura Maith, and I, together with Robert Gombiner, represent the petitioner-appellant, Mr. Aaron Lord, in this Habeas Petition brought pursuant to 2254. I did receive this Court's order of Friday, and I'm prepared to begin by addressing those questions unless this Court would prefer that I begin with the issues in the briefs. Why don't you go right ahead. I'd like to start with the third question in the order regarding the Certificate of Appealability. As to whether this Court has jurisdiction to entertain the merits of this claim, even if it believes that the Certificate of Appealability was improvidently granted. The answer to that is yes. This Court has addressed that issue in Gatlin v. Matting. It's a case very similar to this one where briefs were completed, and at that point, the State raised the argument that the Certificate of Appealability had been improvidently granted. And the Court held that the issuance of the Certificate of Appealability by this Court resolves the jurisdictional issue. So as for jurisdiction, this Court has it. That seems right. I think we discovered that more afterwards, after we sent out the letter. Okay. And I think that resolves, at least for purposes of this case, the first and second questions. Well, the answer to the first question is almost surely no, right? That you could not properly issue a Certificate of Appealability on the question. I think that that's not clear, that the Supreme Court has recognized that there is a difference between the words used in barefoot v. Estelle in terms of Federal law versus Constitutional law. But the Supreme Court has not yet addressed whether that change means anything. And there's no legislative history as to whether that change means anything. So I don't believe the answer to that is crystal clear at this point. And I'd be happy to comment more on that, or I could move on to some of the issues, such as the cognizability of the claim, whichever this Court would prefer. I'd like to hear a little bit more about whether AEDPA permits us to reach a purely statutory question. Yes, I believe it does. Clearly under 2254, 2255, and 2241, this Court has jurisdiction to decide statutory claims as long as they rise to the level of important statutory claims as defined by the Supreme Court in cases such as Hill, Davidson Rape. Well, a petition can be filed raising that, and the district court has jurisdiction. Correct. It seems Judge Hawkins wants to address this. As to whether it can be appealed. Right. The only limitation on the appeal comes in the standard for granting the Certificate of Appealability. This Court, the Seventh Circuit, the Second Circuit, and the Tenth Circuit, have all held that as soon as the Certificate of Appealability has been issued, this Court has jurisdiction. As to whether you can meet the standard for granting the Certificate of Appealability on a purely statutory claim, I believe the answer to that as well is yes. And that gets into looking at the legislative history and AEDPA and things like that. I'd be happy to talk more about that. I'm not sure it's relevant to this particular case as the Certificate of Appealability has been issued. Would you like me to? Why don't you proceed to your other points, unless Judge Thompson would like to hear more on that. Ms. Mait, thank you, Judge Hawkins. Ms. Mait, suppose we were to conclude that our appellate jurisdiction depended upon an asserted violation of the Constitution as opposed to a statutory violation. Would you argue that there was a constitutional violation in this case? And if so, what is it? Yes, I do believe that the claim presented in this appeal implicates the supremacy clause of the Constitution as to whether Title III preempts the state law. So I do believe there's a constitutional issue in this case. Okay. Thank you. And, in fact, Judge Posner from the Seventh Circuit has specifically addressed the supremacy clause as a constitutional claim in another statutory case. Moving on to the cognizability of this claim, given that it turns on an interpretation of Title III, I'd like to talk a little bit about the standard for that, which, as I set forth in the brief, was articulated in Reed v. Farley as a fundamental defect, which inherently results in a complete miscarriage of justice. Articulated another way, the standard is whether the violation of the statute or rule occurred in the context of other aggravating circumstances. But does it make any difference that whatever the context, that this is an exclusionary rule kind of a rule? That is, are we looking at the fundamental fairness of whether the trial resulted in convicting an innocent person? Are we looking for something broader than that, which would include the privacy interest that was impaired before, which isn't going to be recompensed anyway except through exclusion? I think when the Court talks about a violation of a rule in the presence of other aggravating circumstances, what they're looking for is prejudice that comes from that violation. And that's been made clear in Reed and in Pagaro. And so I think this may be answering your question, but in addition to having the privacy right violated, the other harm that Mr. Lord suffered is the prejudice that he suffered as the result of the admission of this evidence at trial. Better evidence of his discussions about this murder plot, weren't there? There were two other witnesses that talked about having conversations with Mr. Lord. And he, in fact, took the stand and agreed with the content of every single one of the conversations. His defense was he was joking. Yes, that's correct. That is correct. How does all of that play into notions of harmless error? I think when you're looking at prejudice, this Court has made clear that you can't assume that the defendant would have taken the stand when you're talking about erroneously admitted evidence, that that decision to take the stand can be influenced by what evidence is admitted. So assuming — Your question is, notwithstanding that there were one or two other witnesses totally independent of any Title III violation that were prepared to and would have taken the stand, that he still would have stayed off? I think if you look at the content of their testimony, that it's a very different thing for Mr. Lord to feel the need to respond to what they were saying, as opposed to responding to Mr. Rogers' testimony. The testimony of Mr. Holland, who admitted that he came forward to the police only after he was arrested on another matter so that he could try to make some arrangements, and in addition, the other testimony by Mr. Pence, is very thin testimony and isn't something that Mr. Lord needed to respond to. But isn't there a possible way of looking at this case that says that it simply is not a matter of fundamental fairness? That exclusion of evidence under these circumstances is just not a matter of fundamental fairness. I mean, it's sort of Stone v. Powell transposed. It's not an argument that there's no habeas, but it's an argument that substantively, when we know that all of this happens, there just couldn't be a violation of fundamental fairness. Like, for example, I guess Davis, where he was being convicted for a crime that didn't exist. Absolutely. I think in this case, you have a situation where, first of all, Stone v. Powell hasn't been applied in these statutory claims. So to look at the process. But there is one case, whom I wish I'm forgetting, which applies it sort of, doesn't apply it, but applies the same reasoning, essentially. True. But I think the Supreme Court in both Reed and Figueroa have indicated a willingness to move away from Stone v. Powell and to limit that to judicially-created exclusionary rules. And when you're talking about a statutory exclusionary rule, Congress has very clearly stated that this is such an important right that it needs to be, this type of evidence needs to be excluded from these cases, which is different from a judicial exclusionary rule. And it's not just the privacy right violation that impacted Mr. Lord. It was the effect of that violation, the prejudice to him in the trial of having this admitted. Did you want to save some time for rebuttal? No, I think I'm okay. Okay. We're ready to have that. Any other questions on this kind of statutory nature? Ms. Thompson, any questions? No questions. No. I also want to briefly touch on 2254D in relationship to this claim. I don't think in this case there are limitations imposed by D because the State Court's opinion was contrary to clearly established Supreme Court law or an unreasonable application of that. In reaching the decision that a cordless telephone call does not constitute a wire communication, the State Court looked to a Sixth Circuit opinion that interpreted the statute pre-'94, before it had been amended, and did not look to clearly established Supreme Court law on how to interpret statutes. It did not look to the canons of statutory interpretation as basic as look at the statutory language and then look at the legislative history. Did the State Court also reach the attenuation issues of State appellate court? They did not under Title III. They did not. No. I just said it doesn't apply. I just said because it's not. But under the Washington Statute, and the Washington Statute didn't apply either. They said that. They found that the Maryland statute applied. They did not address it under the Federal. They addressed it under anything. I believe they looked at it under Maryland. No, they didn't, because they did not under Maryland law. It was earlier. So it was never addressed. It's not. The district, the trial court in Washington had found no attenuation. The trial court under Washington law found that the testimony was sufficiently attenuated, though the statement to the police was not. Mr. Rogers' statement to the police was not. Thank you for your argument. Thank you very much. We'll hear from the State at this time. Mr. Rosen. Thank you, Your Honor. May it please the Court. My name is Greg Rosen. I'm an assistant attorney general, and I represent the Respondent, John Lambert, in this matter. I'd like to address the first of the Court's three questions in its order. The answer to the first question is unequivocally no. There's obviously two different standards that must be met between filing a habeas petition. That can be either under U.S. constitutional law or under Federal law if you meet the Davis-Hill standards. But the standard under 28 U.S.C. 22. What about the Supremacy Clause, ideally, which was mentioned, i.e., the notion that a statutory issue is essentially a Supremacy Clause issue and therefore is a constitutional issue? Your Honor, I would imagine you can piggyback any Federal statutory right onto a U.S. constitutional right by claiming some connection to it, as Mr. Lord has done here as to the Supremacy Clause. I understand that. So the question is, does that work or not? No, Your Honor. I would submit it does not work. The standard under 2253c2 is the substantial showing of the denial of a constitutional right. The reality is this is a Title III claim. This is a statutory interpretation of a Federal statute. And dressing it as a Supremacy Clause issue does not make it a constitutional claim as required by 2253c2. The standards are different between filing the initial habeas petition in district court and appealing to this Court for this Court to properly have jurisdiction. And because claims can only be appealed to this Court if there is a substantial showing of the denial of a constitutional right, this Court does not properly have jurisdiction in this particular case. Now, the answer to the third question. Mr. Rosen. Mr. Rosen, this is Thompson. Yes, Your Honor. Do you think that makes any sense? I mean, why shouldn't we, if we're going to review what district courts do in habeas cases, why shouldn't we review whatever they have a jurisdictional power to do? I mean, what sense is there in limiting us to a review of constitutional issues, other than saying, well, that's what the statute says? Your Honor, the intent, I would submit, of the DIPA amendment in 1996 was to limit, not increase, the amount of appeals that came to the Ninth Circuit. That is why the other circuits. Well, we're in the Ninth Circuit, so I'm addressing the Ninth Circuit. I can't speak for other circuits, Your Honor. But the intent of the DIPA, again, I would submit to Judge Thompson, was to limit the appeals that came to the circuit court. Well, that's true, but you can just say every other one. I mean, what Judge Thompson has asked me was why limit it, what sense does it make to limit it this way? If the only object was to limit the appeals, you could say, all right, every other appeal will be taken. Obviously, there's some, if you're right, there was some choice made here. The question is, does it make any sense, and why? Well, the U.S. Supreme Court, in contrast to what Ms. Maid has indicated, has directly addressed this issue in Slack v. McDaniel. And the Court stated specifically in Slack that, except for substituting the word constitutional for the word Federal, 2253 is a codification of the Certificate of Probable Cause standard, announced in barefoot, and I'm going on, Congress had before it the meaning barefoot had given to the words it selected. And we give the language found in Section 2253C the meaning ascribed in barefoot with due note for the substitution of the word constitutional. This Court has stated in another case, Hivala v. Wood, that when Congress makes a change to a statute, it is assumed that there is a reason for that change. Okay. So what about, it might be worth jumping to the last question, then. What about the case that was cited to us and the proposition that once the COA issues, we have, we can go forward? We must go forward, indeed. Okay. In response to that question, Your Honor, I would first make an oral motion for this Court to vacate the Certificate of Appealability, which it issued back on October 24, 2002. This Court has, in fact, ruled not only in Gatlin v. Madding, but in James v. Giles as well, that once the COA has issued, this Court has passed the procedural threshold for jurisdiction and can move on to the merits. However, as Ms. May correctly pointed out, Second Circuit and Tenth Circuit have ruled that way as well. She neglected to mention that the Third Circuit and Eighth Circuits have not ruled that way. This Court has the obligation, as this Court well knows, to sua sponte examine the jurisdiction at every stage of the litigation. The reality is the Court is now sitting before it with a Federal statutory judgment. Can I also say that there was a time limit on your filing this motion, a motion to vacate the COA? The case referred to by Ms. May from the Seventh Circuit, I'm not sure she stated the case name. I'm talking about the Ninth Circuit case. Didn't the Ninth Circuit case indicate that the government basically had the time within which the Petitioner could file a motion to expand the COA to file a motion? So in other words, your motion is late. Under the holding of Gatlin v. Madding, I believe the Court did hold there that the State had to move within 35 days. You are correct that my motion is late. However, although it is procedurally defective in that sense, because it is late, the reality is this Court does not have substantive jurisdiction because the Court has before it a Federal statutory interpretation. It does not have a substantial showing of the denial of a constitutional right, as Slack v. McDaniel discussed. But isn't that what Gatlin held, that it doesn't matter if it's a defective COA? That is what Gatlin held. However, other courts, such as the Third and Eighth Circuits, have vacated. You're basically telling us that you disagree with Gatlin. I'm urging this Court to look beyond the holdings of Gatlin and James v. Giles, to look to determine whether this Court substantially wants to rule and accept, believe that it has jurisdiction based on a procedural threshold being passed, just based upon an issuance of a COA, and not looking to the substantive nature of the claim, which is an interpretation, and let's be honest, interpretation of a Federal statute. That is not a substantial Gatlin says? I'm sorry, Your Honor? Isn't that what Gatlin says? Yes, Your Honor. But I'm urging this Court to vary somewhat from its prior jurisprudence. Disregard it? I'm sorry? To disregard it? No, I'm asking this Court to distinguish it. Tell us how. You're now my marker for whom I'm writing this opinion. Well, this case should be distinguished from Gatlin and James v. Giles. It's another Ninth Circuit case that followed Gatlin's holding. And this Court should distinguish Gatlin and James v. Giles based upon the fact that the Court should not rule on cases in which it knows substantively that it does not have subject-matter jurisdiction, despite the fact that the. But that, of course, is circular, because the rationale of Gatlin and of the other case, similar case, is that this is a jurisdictional problem, right? I mean, isn't the whole point there that this is a screening? The COA requirement is a screening device, not a jurisdictional ruling. It's not stated as a jurisdictional ruling in the statute. And then once the COA issues the screening function, we do have jurisdiction, not we don't have jurisdiction. There is a difference clearly between the absence of the COA when this Court, and I don't think any of the Ms. Mait would disagree with this, the Court clearly would have no jurisdiction if no COA had issued, and the issuance of an improvident, as the case law puts it, or incorrect COA. Apparently, and what Gatlin said, unless you make a motion, a timely motion, and you didn't make one, we go forward, no? Yes. If the Court adheres to the holding of Gatlin and adheres to it. I mean, we're sitting here in a three-judge panel, and unless the case is going on bonk, that's what we're going to do. Well, as Judge Hawkins pointed out, Your Honor, this Court can also distinguish between this Court's. Now, not on the basis that we don't have jurisdiction because it's not constitutional, because that's exactly what Gatlin holds. We do have jurisdiction, even if the COA was improvidently granted. The Court has procedural jurisdiction in the sense that a COA has issued, even though it was used. Could you pause for just one second and stop the clock? Yes, Your Honor. Sir? The dressing room is outside. I apologize, Your Honor. Just step outside. Thank you very much. I'm sorry for being a hassle. No, that's okay, Your Honor. I'm asking this Court, Judge Berzon, to distinguish its prior jurisprudence. I'm not asking you to overrule it. I don't think it's necessary for this Court to reach that result. But it's clear that this Court has to be you can turn a blind eye, and I don't mean that in any disrespectful or pejorative sense, but this Court can turn a limited eye, perhaps is a better way of putting it, and look at Gatlin, look at James and say, ball games. We've got jurisdiction. Let's move on to the merits. But I would submit to the Court that if the Court wants to rule substantively on a Federal habeas claim, there should be the appropriate standard met. And right now, what sits before the Court is the statute. But you never told us this. I mean, you, I mean, was that? No, that's in my brief. Right? I believe. We just started wondering about it as we were staring at this. No. No, I'm sorry. I may be correct. That was not in my brief. I was thinking about another issue. That was not in my brief. I misspoke. No. In fact, I indicated in my brief that I did agree that the Court had jurisdiction. But as the Court is well aware, a party's concurrence cannot confer jurisdiction upon the Ninth Circuit. And I think the Court is well aware of that. I think my time is almost up. Are there any other questions? I don't see any. Judge Thompson? No, thank you. Thank you for your argument, Mr. Rosen. Thank you. I just argued Lord v. Lambert will be submitted for decision.
judges: Thompson, Hawkins, Berzon